UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAYNE ENTERPRISES, LLC; and CLUNE ENTERPRISES, LLC., | Case No. 1:15-CV-00195-EJL |
| Plaintiffs, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KIRT MCGHEE; TURNKEY INVESTMENTS, LLC., | |
| Defendant. | |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiffs have responded to the Motion and the matter is ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a failed investment venture between the parties. The Plaintiffs, Wayne Enterprises, LLC ("Wayne") and Clune Enterprises, LLC ("Clune"), are both Idaho corporations (collectively, "Plaintiffs"). The Defendants are Turnkey Investments, LLC ("TKI"), a business organized under the laws of Colorado with its primary operations in Houston, Texas, and Kirt McGhee ("McGhee"), TKI's founder and principal (collectively, "Defendants"). (Dkt. 1, ¶¶1-4.)

On or about January, 2011, McGhee hired Kevin Chandler ("Chandler"), who lives and works in Idaho. (Dkt. 12, ¶¶1-4.) Defendants dispute the nature of McGhee's relationship with Chandler. (Dkt. 13, pp. 2-3.) For the purposes of this Motion, the Court will accept the facts as alleged in Chandler's affidavit.[1] (Dkt. 12.) McGhee hired Chandler to market real estate investment opportunities and procure Idaho investors for TKI, agreeing to compensate Chandler by paying him a portion of TKI's profits made from the Idaho investors. *(Id.* at ¶¶5-6.) Chandler worked largely by email to identify and convert investors on behalf of TKI. (Dkt. 11, pp. 4-5.) Chandler eventually approached Wayne's principal, Brett Hanson ("Hanson"), about investing with Defendants, and introduced Hanson to

---

[1] Where a defendant has moved to dismiss a complaint for lack of personal jurisdiction, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (citations omitted).

Defendants.  (Dkt. 12, ¶17.)  Hanson later introduced Defendants to Clune's

principal, Zachary Clune.  In June, 2012, after McGhee made contact with Hanson

and Clune, Chandler terminated his relationship with Defendants.  (*See id.* at ¶¶28-

29.)

On October 22, 2012, Plaintiffs agreed to pay McGhee $75,000 in funds to

be used for the development and sale of a residential Texas property

("Agreement").  (Dkt. 1, ¶5.)  The terms of the Agreement stated that the loan

amount would "be paid off by the 6 month period or at the sale of the

property…which ever [sic] comes first."  (Dkt. 1-1, p. 6.)  The Agreement also

appointed Plaintiffs as managers and 50% owners of TKI 1, a holding company to

the title of the property.  (*Id.*)  TKI 1 was registered in and organized under the

laws of Texas.  (Dkt. 6-1, p. 3.)  TKI and TKI 1 served as the developers for the

construction of the property, and later oversaw the sale of the property.  (*Id.*)

The construction of the property was fraught with problems and cost

overruns, and the property was not sold until February 5, 2015.  (*Id.* at pp. 3-4.)

On June 5, 2015, Plaintiffs filed this lawsuit against McGhee and TKI alleging

claims for: (1) breach of written contract; (2) fraudulent expression of opinion as

fact; (3) fraudulent nondisclosure of known facts; (4) fraud by negligent

nondisclosure by fiduciary; (5) fraud by misrepresentation of financial track

record; (6) fraud by false promise; (7) breach of fiduciary duty as investment

advisor; (8) breach of fiduciary duty as co-owner of LLC; (9) accounting; and (10) unjust enrichment.  (Dkt. 1, pp. 5-10.)

Defendants then filed the instant Motion to Dismiss arguing any communication with the Idaho Plaintiffs was insufficient to establish personal jurisdiction over Defendants.  (Dkt. 6.)  Plaintiffs, on the other hand, argue personal jurisdiction is appropriate here because Defendants hired Chandler to specifically target Idaho investors.  (Dkt. 11, pp. 4-5.)  The Court has considered the parties' arguments and finds as follows.

## STANDARD OF LAW

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of proving jurisdiction is appropriate.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  The plaintiff "need only make a prima facie showing of jurisdictional facts."  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  Where a motion to dismiss is based on written materials rather than an evidentiary hearing, plaintiffs need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Where, as here, no federal statute governing personal jurisdiction applies, the Court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Idaho's long-arm statute, Idaho Code § 5-514, allows a broader application of personal jurisdiction than due process permits, the Court need look only to due process to determine personal jurisdiction. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009). Thus, under Idaho law, the statutory and due process analyses are the same. *Id.*

## ANALYSIS

### 1.  Types of Personal Jurisdiction: General and Specific

There are two types of personal jurisdiction—general and specific. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). General jurisdiction is exercised by a state when it asserts personal jurisdiction over a "defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicoptores Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 n. 9 (1984). This occurs when the defendant has "substantial" or "continuous and systematic" contacts with the state to the extent that these contacts approximate physical presence. See *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000). Contrastingly, specific jurisdiction is exercised by a state when it asserts personal jurisdiction over a defendant in a suit that is arising out of or related to the defendant's contacts

with the forum state.  *Helicoptores*, 466 U.S. at 414 n. 8.  Specific jurisdiction

depends on the quality and nature of the defendant's contacts with the forum state

in relation to the cause of action.  *Lake*, 817 F.2d at 1421.   Here, the Plaintiffs seek

to invoke both general and specific jurisdiction over the Defendants.

## 2.  General Jurisdiction

"The standard for establishing general jurisdiction is 'fairly high,' *Bancroft &*

*Masters*, 223 F.3d at 1086 (quoting *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073

(9th Cir. 1986)), and requires that the defendant's contacts be of the sort that

approximates physical presence."  *Id.* (citing *Gates Learjet Corp. v. Jensen*, 743

F.2d 1325, 1331 (9th Cir. 1984)).  There are several factors to consider when

determining general jurisdiction: "whether defendant makes sales, solicits or

engages in business in the state, serves the state's markets, designates an agent for

service of process, holds a license, or is incorporated there."  *Id*; *see also Hirsh v.*

*Blue Cross, Blue Shield of Kansas City*, 800 F. 2d 1474, 1478 (9th Cir. 1986).

Plaintiffs contend they have met the burden of establishing general

jurisdiction through Defendants' pursuit of Idaho investors and/or lenders,

primarily through Chandler.  On the other hand, Defendants allege Plaintiffs have

not established general jurisdiction because Chandler was not Defendants' agent

and he had severed ties with McGhee by the time that McGhee entered into the

Agreement with Plaintiffs.

Even assuming McGhee hired Chandler for the purpose of obtaining Idaho investors, Plaintiffs have failed to establish that Defendants' relationship with Idaho was so substantial or continuous and systematic as to warrant the Court's exercise of general jurisdiction.  Specifically, TKI is not registered or licensed to do business in Idaho, it does not pay taxes or maintain bank accounts in Idaho, and it does not publish print, television, or radio advertising in Idaho.  *Bancroft & Masters*, 223 F.3d at 1086.  While Defendants' contacts with Plaintiffs may be sufficient to say Defendants were engaging in business in Idaho, that does not constitute the kind of physical presence in Idaho that would give rise to general jurisdiction here.  *Id.* (citing *Helicopteros*, 466 U.S. at 418 ("no general jurisdiction over helicopter transportation company that purchased 80 percent of its helicopters, spare parts, and accessories from Texas sources over a four year period.")). Merely "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."  *Id.*  Based on the foregoing, the Court finds the Plaintiffs have failed to satisfy their burden to show general jurisdiction would be appropriate.

### 3.  Specific Jurisdiction

The Ninth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction over a nonresident defendant:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails

himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Ballard*, 65 F.3d at 1498.  The Ninth Circuit has also noted that these "contacts" requirements can be lessened if considerations of reasonableness so demand. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).  The plaintiff has the burden of satisfying the first two prongs.  *Lake*, 817 F.2d at 1421.  The burden then shifts to the defendant to demonstrate unreasonableness.  *Boschetto*, 539 F.3d at 1016.

> **(a)** *Purposeful Availment/Direction Requirement*

As this Court noted in *Vandersloot v. BMW Properties,* LLC, 2013 WL 1867352, at *3 (D. Idaho May 1, 2013), the first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous or attenuated contacts or on account of the unilateral activity of third parties.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in Ninth Circuit case law.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 802).  A purposeful availment analysis is more often used in suits involving contracts,

whereas a purposeful direction analysis applies to suits involving torts. *Id.* This case involves both contract and tort claims.

A defendant satisfies the purposeful availment test by performing an affirmative act, such as executing a contract, which allows or promotes the transaction of business within the forum. *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). The existence of a contract with a party in the forum state does not automatically establish the minimum contacts necessary for personal jurisdiction. *Burger King Corp.*, 471 U.S. at 479-80. The Court must also consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' course of dealing." *Id.*

Purposeful direction requires that the defendant's actions outside the forum state are directed at the forum. *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit employs a three-part "effects" test to determine whether a defendant purposefully directs its acts at the forum. *Dole Food Co., Inc.*, 303 F.3d at 1111. The defendant must be alleged to have: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knew was likely to be suffered in the forum state. *Id.*

The contact giving rise to personal jurisdiction in this case is Defendants' alleged use of Chandler as their agent to promote TKI as an investment opportunity to his potential investors in Idaho. The Supreme Court has recognized that agency

relationships may be relevant to the existence of specific jurisdiction, concluding "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," and a "defendant's act of 'marketing a product through a distributor who has agreed to serve as the sales agent in the forum State' may amount to purposeful availment."  *Daimler AG v. Bauman*, 134 S.Ct. 746, 759 n. 13 (2014) (quoting *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987)).

Again, for the purposes of this Motion, the Court assumes Defendants employed Chandler as an agent to market real estate investment opportunities and to procure potential TKI investors in Idaho.  In this context, Chandler located Hanson and presented him with information about investing with Defendants, which led to the Plaintiffs entering into the Agreement with Defendants that ultimately gave rise to the contract claim in this case.  The Court finds Defendants' act of marketing its investment opportunities through Chandler, who agreed to serve as the Defendants' sales agent in Idaho, amounts to purposeful availment.

The Court finds these same facts also satisfy the purposeful direction test. The Defendants' use of Chandler as their agent was an intentional act aimed expressly at Idaho with knowledge that the Plaintiffs' harm would be suffered in Idaho.

**(b)** *Claim Arises Out of or is Related to Defendants' Activities in Forum*

The second requirement for specific personal jurisdiction demands that the contacts constituting purposeful availment or purposeful direction give rise to the lawsuit. *Dole Food Co., Inc.*, 303 F.3d at 1108. The Ninth Circuit implements a "but for" causation test: personal jurisdiction is proper only where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred. *Id.*

Plaintiffs allege that but for Defendants' marketing activities directed at Idaho, Plaintiffs would not have loaned money to Defendants and therefore would not have suffered the resulting injuries. (Dkt. 11, p. 10.) Defendants assert that because Plaintiffs' claims arise out of a contract that solely concerns Texas property and the formation of an LLC in Texas, those claims cannot have arisen out of Defendants' forum-related activities. (Dkt. 6-1, pp. 11-12.) However, Defendants do not dispute that Chandler introduced Defendants to Hanson, and Hanson subsequently introduced Defendants to Clune. Nor do Defendants allege Hanson and Clune would have somehow become acquainted with McGhee without the initial introduction from Chandler. Thus, if Defendants had not employed Chandler as an agent to procure Idaho investors, the parties would not have met and eventually entered into the Agreement together. In short, "but for" Defendants' purposeful contacts, Plaintiffs would not have claims for breach of

contract or fraud.  Thus, the Court finds the claims arise out of or are related to the

Defendants' activities in the forum.

   **(c)** *Reasonableness*

   The final requirement for specific personal jurisdiction demands that the

exercise of jurisdiction is reasonable and comports with the notions of fair play and

substantial justice.  *Bancroft & Masters*, 233 F.3d at 1088.  Defendants bear the

burden of proof on this element.  *Id.*  A court determines reasonableness by seven

factors: (1) the extent of the defendants' purposeful interjection into the forum

state's affairs; (2) the burden on the defendant of defending in the forum; (3) the

extent of conflict with the sovereignty of the defendant's state; (4) the forum

state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

of the controversy; (6) the importance of the forum to the plaintiff's interest in

convenient and effective relief; and (7) the existence of an alternative forum.  *Id.*

   Defendants argue even if the Court finds Plaintiffs have carried their burden

on the first two jurisdictional prongs, exercising specific jurisdiction in this case is

unreasonable.  In balancing the seven factors, the Court finds jurisdiction in Idaho

comports with "fair play and substantial justice."  *Paccar Int'l v. Commercial Bank*

*of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985).  As previously discussed,

Defendants purposefully interjected themselves in Idaho by employing Chandler to

market TKI investment opportunities to Idaho lenders, resulting in the introduction

of Hanson to Defendants and the ensuing Agreement. The burden on the parties of litigating the case is relatively equal whether the case is tried in Idaho or Texas. While litigation is always expensive, modern advances in communication and technology have significantly reduced the burdens of litigating in another state.

Defendants also have not demonstrated any conflict with the sovereignty of their home state. Idaho has a strong interest in providing redress for its residents alleging a tortious injury. *Burger King Corp.*, 471 U.S. at 473. Defendants contend potential witnesses are in Texas, but it appears from the record there are witnesses in Idaho as well. Specifically, while Defendants are in Texas and have identified McGhee's wife as a potential witness in Texas, Plaintiffs and Chandler are all in Idaho. The Court therefore finds the efficient judicial resolution of this case can be had in either state. The Court is confident either the federal district court in Idaho or Texas would manage the case efficiently and effectively to properly allocate limited judicial resources and still allow the parties their day in court.

On balance, Defendants have not shown exercise of jurisdiction in Idaho is unreasonable. Further, the Court finds adjudication in Idaho does not offend the traditional notions of fair play and substantial justice. *Bancroft & Masters*, 233 F.3d at 1088-89.

MEMORANDUM DECISION AND ORDER

16ordes/TKI_Personal Jurisdiction

Based on the foregoing, the Court finds it is has specific personal jurisdiction over Defendants McGhee and TKI in this case.

## ORDER

Having carefully considered the filings of all the parties and entire record in this case, and for the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 6) is **DENIED.**

The parties are directed to meet and confer and file a new Joint Litigation Plan by July 15, 2016.

DATED: June 28, 2016

Edward J. Lodge
United States District Judge

MEMORANDUM DECISION AND ORDER
16ordes/TKI_Personal Jurisdiction