UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAYNE ENTERPRISES, LLC; and, CLUNE ENTERPRISES, LLC,<br><br>  Plaintiffs,<br><br>v.<br><br>KIRT MCGHEE; TURNKEY INVESTMENTS, LLC,<br><br>  Defendants. | Case No. 1:15-cv-00195-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court in the above-entitled matter is the Plaintiffs' Motion for Default Judgment as to the Defendants Kirt McGhee and Turnkey Investments, LLC. (Dkt. 29.) Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion is decided on the record without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a failed real estate investment venture between the parties. The Plaintiffs, Wayne Enterprises, LLC and Clune Enterprises, LLC, are both Idaho corporations. The Defendants are Turnkey Investments, LLC ("TKI"), a business

organized under the laws of Colorado with its primary operations in Houston, Texas, and Kirt McGhee, TKI's founder and principal. (Dkt. 1 at ¶¶1-4.)

Plaintiffs and Defendant McGhee were introduced by an individual third party and the two began discussing real estate investment opportunities. On October 22, 2012, the parties entered into an Agreement wherein the Plaintiffs agreed to supply funds in the amount of $75,000 to Defendants for the acquisition, development, and sale of a residential property located in Missouri City, Texas. (Dkt. 1, Ex. C.) The Agreement provided that Plaintiffs would be "compensated in a twelve (12) month APR of 25% interest" with a guarantee that at least one full year's interest would be paid to Plaintiffs. Additionally, the Agreement stated that the loan would "be paid off by the 6 month period or at the sale of the property…which ever [sic] comes first." (Dkt. 1, Ex. C.) The Agreement provided that Plaintiffs would be added as managers and 50% owners in TKI Foreign Entity LLC, known as "TKI 1," which is a holding company registered and organized under the laws of Texas. Title to the property was to be held by TKI 1 until after it was sold at which time funds from the sale would then be disbursed as agreed by the parties in the Agreement.

The construction of the property was fraught with problems and cost overruns resulting in the property not being sold until February 5, 2015.[1] (Dkt. 6 at 3-4.) Plaintiffs have received no payment or disbursement and, consequently, filed this lawsuit against

---

[1] The Complaint represents that the date of the property sale was February 6, 2013. (Dkt. 1 at ¶ 35.) However, McGhee's Declaration and Plaintiffs' other briefing state that the sale occurred on February 5, 2015. (Dkt. 6 at 3) (Dkt. 11 at 8.) Based on the record, the Court finds the sale date to be February 5, 2015 as that date logically corresponds to when this action was filed and is consistent with both parties' briefing.

Defendants raising claims for: (1) breach of written contract; (2) fraudulent expression of opinion as fact; (3) fraudulent nondisclosure of known facts; (4) fraud by negligent nondisclosure by fiduciary; (5) fraud by misrepresentation of financial track record; (6) fraud by false promise; (7) breach of fiduciary duty as investment advisor; (8) breach of fiduciary duty as co-owner of LLC; (9) accounting; and (10) unjust enrichment. (Dkt. 1 at 5-10.)

Defendants filed a Motion to Dismiss which the Court denied on June 28, 2016. (Dkt. 6, 14.) Shortly thereafter, on June 30, 2016, defense counsel filed a Motion to Withdraw. (Dkt. 15.) On July 13, 2016, Plaintiffs filed a Motion for Entry of Default. (Dkt. 17.) Five days later, on July 18, 2016, the Defendants filed an Answer. (Dkt. 19.)

On July 28, 2016, the Court entered an Order granting defense counsel's Motion to Withdraw which stayed the case for a period of twenty-one days. (Dkt. 22.) The Court directed the Defendants to file a written notice as to how they will be represented in this matter and advised that failure to do so would be sufficient grounds for entry of default. (Dkt. 22.) No such notice was filed. Instead, Defendant McGhee filed letters and other materials discussing his financial circumstances and certain aspects of the case. (Dkt 25.) On August 22, 2016, Plaintiffs filed their Second Motion for Default Judgment to which no response was filed. (Dkt. 26, 27.) The Court granted Plaintiffs' Motion in part and entered default against the Defendants. (Dkt. 28.)[2] The Court further directed Plaintiffs to

---

[2] In granting default in this case, the Court was mindful that no default may be entered where the party has filed a response indicating its intent to defend the action. (Dkt. 28); Fed. R. Civ. P. 55(a). While Defendant McGhee's letter makes mention of defending himself in this action, the Court

file a Motion for Default Judgment consistent with Federal Rule of Civil Procedure 55. Plaintiffs have now done so and the Court finds as follows. (Dkt. 29.)

## DISCUSSION

### 1.    Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment where default under Rule 55(a) has been previously entered based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

A defendant's default does not, however, automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986). The court "must still consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d 916, 920 (C.D. Cal. 2010) (citation omitted). "[N]ecessary facts not contained in the pleadings, and claims which are legally

---

determined that the letter was not a proper notice of appearance or response by either Defendant. (Dkt. 25.) That being said, the Court finds it appropriate to consider the letter and related materials in ruling on the Motion for Default Judgment in order to give the parties the most equitable consideration in this matter. (Dkt. 28.) TKI has not appeared or responded, nor can it do so except by way of representation by counsel. *See* Local Civ. R. 83.4(d) and 83.6(c)(3).

insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also Doe v. Qi*, 349 F.Supp.2d 1258, 1272 (N.D. Cal. 2004) ("[Although] the factual allegations of [the] complaint together with other competent evidence submitted by the moving party are normally taken as true ... this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief.")). Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Whether default judgment should be entered is within the discretion of the court. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one."). In deciding whether to exercise their discretion to impose judgment by default, courts consider the following:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted); *see also Landstar*, 725 F.Supp.2d at 920.

### A.     Possible Prejudice to Plaintiff

As to the first factor, the possibility of prejudice to the Plaintiffs, the Court finds this factor supports the issuance of a default judgment. Without a judgment, Plaintiffs

would be unable to collect the amount they are owed under the terms of the Agreement. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002).

**B.    Sufficiency of the Complaint / Merits of Plaintiffs' Substantive Claims**

The second and third factors concerning the merits of Plaintiffs' case and the sufficiency of Plaintiffs' Complaint are commonly analyzed together. *PepsiCo,* 238 F.Supp.2d at 1175–76. These two factors "require that a plaintiff state a claim on which [it] may recover." *Id.* Again, the Court takes the factual allegations in the Complaint as true. *Geddes*, 559 F.2d at 560. The Complaint in this case raises ten claims for relief which the Court will take up in turn. (Dkt. 1.)

As an initial matter, however, the Court considers which state's law applies to the claims. Plaintiffs apply Idaho law. (Dkt. 29.) Defendant McGhee argues the case should be brought in Colorado against TKI or in Texas. (Dkt. 25.) This is a diversity jurisdiction case bringing both contract and tort based claims. (Dkt. 1.)

A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state to determine the controlling substantive law. *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012); *Fields v. Legacy Health Syst.*, 413 F.3d 943, 950 (9th Cir. 2005). Idaho applies the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws § 145 to determine which state's laws govern. *Carroll v. MBNA America Bank*, 220 P.3d 1080, 1084 (Idaho 2009). Under this analysis, an Idaho court would enforce a choice of law provision in a contract, "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Ward v. Puregro Co.*, 913 P.2d 582, 585 (Idaho 1996) (quoting Restatement

MEMORANDUM DECISION AND ORDER - 6

(Second) of Conflict of Laws § 187). In this case, however, there is no choice of law provision in the Agreement.

In the absence of any choice of law provision in the contract, the Court takes into account the following contacts: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See* Restatement (Second) of Conflicts of Laws § 188(2). Similarly, in tort cases, courts consider: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Grover v. Isom*, 53 P.3d 821, 824 (Idaho 2002). "'Of these contacts, the most important in guiding [the Idaho Supreme Court's] past decisions in tort cases has been the place where the injury occurred.'" *Id*. (quoting *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (Idaho 1995)). "The goal of this test is to identify the state most significantly related to a particular issue and to apply its law to resolve that issue." *Seubert*, 889 P .2d at 85. Considering these factors, the Court finds Texas has the most significant relationship to the claims in this case. *See Sword v. Sweet*, 92 P.3d 492, 496 (Idaho 2004) (discussing the "most significant relationship" test).

The place of contracting and negotiation of the contract were made while each party was physically located in their respective resident states; with Plaintiffs being in Idaho and

Defendants in Texas.[3] Likewise, the parties' places of incorporation, places of business, and domiciles are in their resident states. The Court finds these factors to be neutral in terms of which state has the most significant relationship to the claims here.

The factors concerning the subject matter of the contract and place of performance, however, are determinative. Plaintiffs argue the place of performance, i.e., repayment of the funds, is in Idaho and that the damages they have suffered were felt in Idaho. (Dkt. 1, 29.) The Court disagrees. The property purchased under the terms of the Agreement, is located in Texas. The purchase, development, and sale of that property is the *sine qua non* of the parties' relationship and resulting claims brought in this case.[4] Moreover, the entity created by the parties' Agreement, TKI 1, was organized, operated, and located in Texas. (Dkt. 1, Ex. D.) Based on the foregoing, the Court finds Texas is the state with the most significant relationship to the claims in this case. Accordingly, Texas state law applies here.[5]

---

[3] As discussed in the Court's Order on the Motion to Dismiss, the Plaintiffs were introduced to Defendants through their agent in Idaho. (Dkt. 14.) That fact established the Defendants had purposefully availed themselves of personal jurisdiction in Idaho by directing their marketing for investors to Idaho. (Dkt. 14.) The Court's conclusion with respect to personal jurisdiction is not determinative of the choice of law analysis now before it.

[4] In this respect, the Court disagrees with Plaintiffs' argument that the gravamen of this action is the Agreement itself, not the property. (Dkt. 11 at 7-8.) The terms and obligations in the Agreement which Plaintiffs' seek to enforce in this lawsuit are based upon the parties' dealings with respect to the property, making the property the subject of the parties' dispute.

[5] The Idaho law that would govern the claims is substantially similar to Texas law. As such, the Court finds the outcome of this case would be the same regardless of which states' law is applied.

## 1)    First Cause of Action - Breach of Contract

"The elements of a breach of contract claim are: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." *Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 551 (Tex. App.-Houston (14th Dist.) 2016).[6]

Plaintiffs' Complaint states a sufficient cause of action upon which Plaintiffs may recover. The Defendants do not dispute the allegations making up the elements of this claim. The Agreement was a valid contract. Plaintiffs performed under the contract by providing $75,000 in funds. Defendants have not repaid the Plaintiffs in accordance with the terms of the Agreement causing damages to Plaintiffs. (Dkt. 1.) Based on the foregoing, the Court finds the elements of the breach of contract claim are met and default against TKI is proper.

As to Defendant McGhee's individual liability, he has filed a *pro se* letter wherein he argues he cannot be personally liable in this action because the Agreement was entered into between the respective entities and he never signed a personal guarantee. (Dkt. 25.)[7]

---

[6] The elements of a breach of contract claim in Idaho are in accord. *Path to Health, LLP v. Long*, 383 P.3d 1220, 1227 (Idaho 2016) (quoting *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013)).

[7] In his letter, Defendant McGhee also argues there were no profits to distribute after the sale of the property. (Dkt. 25.) This may impact whether and how much Plaintiffs can collect from Defendants but does not alleviate the contractual obligation to repay Plaintiffs. The express terms of the Agreement do not include that Plaintiffs' repayment was conditioned on there being profits from the property sale. (Dkt. 1, Ex. C.)

Plaintiffs maintain Defendant McGhee is individually liable because he operated TKI as a mere alter ego of himself. (Dkt. 1 at ¶¶ 39-42) (Dkt. 29 at 3.)

It is well established that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations as a separate legal entity. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). Under the common law, when the corporation's affiliate—such as an owner, shareholder, officer, or director—has used the corporate form "as part of a basically unfair device to achieve an inequitable result," courts have disregarded the corporate structure and have allowed a corporate obligee to hold a corporate affiliate personally liable for the corporation's obligations. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). One method at common law that could be used to disregard the corporate structure was to establish that the corporate affiliate used the corporation as an "alter ego" by organizing and operating the corporation as a mere tool or business conduit. *See id.* at 272.

Under Texas law, however, the alter ego theory can be "used to pierce the corporate veil only if: (1) actual fraud is shown and (2) it was perpetrated primarily for the direct personal benefit of the corporation's shareholder, beneficial owner, subscriber, or affiliate." *Viajes Gerpa, S.A. v. Fazeli*, No. 14-15-00608-CV, 2016 WL 7478352, at *5 (Tex. App.-Houston (14th Dist.) 2016) (citing cases); *see also* Tex. Bus. Orgs. Code Ann. § 21.223 (West 2012).[8] Any such liability for an obligation on behalf of the corporation "is

---

[8] Idaho law allows for the corporate veil to be pierced under the alter ego theory but does not require a showing of actual fraud as required in Texas. *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 329 P.3d 368, 376 (Idaho 2014). In Idaho, "[t]o prove that a company is the alter

exclusive and preempts any other liability imposed for that obligation under common law or otherwise." Tex. Bus. Orgs. Code Ann. § 21.224 (West 2012).

The elements of alter ego in a breach of contract case are: (1) the defendant has a financial interest in, ownership of, or control of the corporation, (2) there is unity between corporation and defendant so that separateness has ceased, (3) it would be an injustice to hold only the corporation liable, (4) the defendant caused the corporation to be used for perpetrating a fraud, and (5) the defendant perpetrated an actual fraud for his direct personal benefit. *See* Tex. Bus. Orgs. Code § 21.223(b); *Mancorp., Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); *Stewart & Stevenson Servs., Inc. v. Serv–Tech, Inc.*, 879 S.W.2d 89, 108 (Tex. App.-Houston (14th Dist.) 1994).

The Court finds Plaintiffs allegations, when taken as true and which McGhee has not disputed, establish the first three alter ego elements. McGhee is the founder, principal, and registered agent of TKI who executed and signed the Agreement with Plaintiffs on behalf of TKI. (Dkt. 6, Dec. McGhee.) McGhee communicated directly with Plaintiffs principals concerning their agreement and made the alleged fraudulent statements upon which Plaintiffs base their claims. McGhee owns, operates, manages, and controls TKI as a mere instrumentality and failed to observe corporate formalities and used funds belonging to TKI for his own personal use. (Dkt. 1 at ¶¶ 40-46.) There is a unity of interest and

---

ego of a member of the company, a claimant must demonstrate (1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow." *Id.* (citations and quotations omitted). For the reasons discussed herein, the Court finds these elements have been shown here and McGhee is personally liable in this case.

ownership between the Defendants such that there is no separation of the two and an inequitable result would follow if the acts giving rise to the claims here are treated as acts of the company.

As to the final two elements required to hold Defendant McGhee individually liable, Plaintiffs must show McGhee used the corporation to perpetrate a fraud and that he committed actual fraud primarily for his own direct personal benefit. The Court has considered those two elements in its discussion below addressing the Plaintiffs' fraud claims and determined the Plaintiffs have satisfied both of these elements as to the Second and Sixth Causes of Action for fraud. Therefore, Plaintiffs have shown Defendant McGhee is individually liable on the breach of contract claim.

The Motion for Default Judgment is granted as to both Defendants on the Breach of Contract claim.

### 2) Fraud Claims

Plaintiffs Second, Third, Fifth, and Sixth Causes of Action raise claims for fraud alleging the Defendants committed fraud as expression of opinion as fact, nondisclosure of known facts, fraud by misrepresentation, and fraud by false promise. (Dkt. 1.)[9]

"To establish that the corporate affiliate engaged in actual fraud through misrepresentation, the obligee has the burden to establish the existence of the traditional

---

[9] The Third Cause of Action is titled a "fraud" claim but alleges breach of fiduciary duty based on Defendants' failure to disclose the felony charges pending against McGhee. (Dkt. 1 at ¶¶ 52-57.) The Court has determined no fiduciary relationship existed in this case and, for that reason, denies the Motion for Default Judgment as to the Third Cause of Action.

elements of a misrepresentation claim, including that the affiliate engaged in a representation that was: (1) material; (2) false; (3) made knowingly or with reckless disregard for its truth or falsity; (4) made with the intention that it be acted upon by the other party; (5) relied upon by the other party; and (6) damaging to the other party." *Chico Auto Parts & Serv., Inc. v. Crockett*, No. 08-15-00021-CV, 2017 WL 192907, at *9 (citing *TransPecos Banks v. Strobach*, 487 S.W.3d 722, 728-31 (Tex. App.-El Paso 2016) (citation omitted)).[10]

A representation is "material" where the plaintiff demonstrates that the representation was of such a nature that a "reasonable person would attach importance to [the representation] and would be induced to act on the information in determining his choice of actions in the transaction in question.'" *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). A representation is not material if it has no effect on the plaintiff's actions. *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 478 (Tex. App.-Fort Worth 2004).

"The plaintiff must further allege and demonstrate that his reliance on the representation was justifiable under the circumstances of a particular case." *Id.* (citations omitted). In determining justifiableness, the court asks whether "'given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the

---

[10] Idaho law requires substantially the same elements for a fraud claim. *See April Beguesse, Inc. v. Rammell*, 328 P.3d 480, 489 (Idaho 2014).

plaintiff's part.'" *Id.* (quoting *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (quoting *Haralson v. E.F. Hutton Grp., Inc.*, 919 F.2d 1014, 1026 (5th Cir. 1990)) (citation omitted).

The Complaint alleges Defendants made several fraudulent representations, omissions, false opinions, and/or promises intended to induce Plaintiffs to enter into the Agreement. (Dkt. 1, 29.) The Complaint alleges the Defendants committed the following fraudulent conduct:

1. Defendants held themselves out as possessing superior knowledge and special information regarding real estate investment by offering to "walk a new or seasoned investor through a project with a Joint Venture or partnership agreement";

2. Defendant McGhee stated he had found a "true gem" in regards to a strong market where houses were selling for a good return in a fairly short amount of time;

3. Defendant McGhee provided TKI's Track Record to further induce confidence in his representations regarding profitability and to bolster those representations as facts rather than mere opinions;

4. Defendant McGhee's representations in the Solicitation Email and TKI's Track Record were false and misleading and intended to provide a false sense of security and false assurances that Defendants were legitimate real estate investors and that Plaintiffs could reasonably expect their $75,000 loan to be repaid; and

5. Defendant McGhee represented that his wife would take no commission for acting as a real estate agent in selling the property that was the subject of the Agreement.

(Dkt. 1 at 6-9.) Defendant McGhee challenges only the allegations concerning reports that he committed real estate fraud; arguing the reports were false. (Dkt. 25.) Defendant does not dispute any of the other allegations of fraud or elements of the fraud claims.[11]

Taking the Plaintiffs' allegations as true, and to the extent they are not contested by Defendants, the Court finds the allegations state claims for actual fraud and establish the six traditional elements of fraud. The fraudulent representations alleged in the complaint are material. Plaintiffs were reasonably induced to act upon the Defendants' representations. The representations were false and made knowingly or with reckless disregard for their truth or falsity. Defendants made the representations intending for Plaintiffs to act upon them. Plaintiffs justifiably relied upon the statements under the circumstances resulting in their damages sought in this case.

Where, as here, the representations are a promise of future performance, the plaintiff must further demonstrate that the defendant made the promises with no intention of performing. *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). A promise of future performance is actionable in fraud only if, at the time the promise was made, the promisor intended to deceive and had no intention of performing. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41,

---

[11] In his letter, Defendant McGhee makes a general argument that the parties' Agreement was a "speculative" investment and that there was "no guarantee to make money." (Dkt. 25.) This reference fails to dispel or contradict the allegations of fraud made by Plaintiff. Moreover, the express language of the Agreement itself characterizes the $75,000 paid by Plaintiffs as a "loan" with repayment terms. (Dkt. 1, Ex. C.) The Court finds the Agreement was for a loan, not an investment.

48 (Tex. 1998).[12] Showing that a party had no intent to perform "is not easy," as such matters are not usually susceptible to direct proof. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006). The failure to perform, standing alone, is not evidence of intent. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Similarly, a party's denial that a promise had been made is not legally sufficient evidence of fraudulent inducement. *See Tony Gullo*, 212 S.W.3d at 305; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992). The claimant must present some circumstantial evidence, however slight, showing an intent to deceive. *See Spoljaric*, 708 S.W.2d at 435. The Court finds Plaintiffs have shown Defendants intended to deceive with no intention of performing only as to the Second and Sixth claims.

On the Second Cause of Action, Plaintiffs argue the Defendants' fraudulent statements about Defendant McGhee's past performance and experience representing he had "superior knowledge and experience to 'walk a new or seasoned investor through a project with a joint venture'" and that the property in this case was a "true gem" in regards to its investment potential were inconsistent with the fact that McGhee had pending charges arising from real estate fraud allegations and his knowledge of the risk of the venture and the loan contract to Plaintiffs. (Dkt. 1 at ¶¶ 47-51) (Dkt. 29 at 3-4.)

---

[12] Idaho law similarly states that establishing fraud requires showing a false statement of fact on which the plaintiff relied and that opinions and predictions cannot form the basis of a fraud claim unless the speaker made a false statement of opinion with the intention of deceiving or misleading. *See Taylor v. AIA Serv. Corp.*, 261 P.3d 829, 843 (Idaho 2011).

In his defense, Defendant McGhee filed his own letter as well as two letters from his grandmother, who was the alleged victim of McGhee's real estate fraud, to support his argument that the reports of real estate fraud were false. (Dkt. 25.) The Court questions the reliability of those materials and their value in dispelling the allegation. Regardless, even considering Defendant McGhee's argument – i.e., that the reports of his involvement in real estate fraud were false – the fact remains, and McGhee does not dispute, that he was charged in Colorado with several felony counts arising from a real estate financing scheme and that those charges were pending at the time the parties negotiated and entered into their Agreement in this case. (Dkt. 1 at ¶¶ 9-13.) McGhee also does not dispute that the pending charges were not disclosed to Plaintiffs. Taking as true that allegations of the fraudulent promises alleged in the Second Cause of Action were inconsistent with McGhee's pending charges, regardless of whether the reports about the charges were false, the Court finds Plaintiffs have shown the Defendants' made the fraudulent statements with the intent to deceive and with no intention to perform on the promises. As to Defendant McGhee, the Court finds he used the corporation to commit the fraud for his own personal benefit and, therefore, is individually liable.

On the Fifth Cause of Action there are no allegations of the Defendants' intent to deceive or intention to not perform, nor do Plaintiffs make any such arguments supporting this claim in their briefing. (Dkt. 1 at ¶¶ 63-69) (Dkt. 29.) Accordingly, the Court denies the Motion for Default Judgment on the Fifth claim.

On the Sixth Cause of Action, the Complaint specifically alleges that Defendant McGhee represented that his wife would take no commission for acting as a real estate

agent in selling the property when, in fact, he always intended for her to take the 4% commission which she did. (Dkt. 1 at ¶¶ 70-76.) Plaintiffs point to a February 16, 2015 email from McGhee confirming his wife took the commission. Defendants have not disputed any of these allegations. Taking the allegations as true, the Court finds they establish a claim for fraud against both Defendants on the Sixth Cause of Action. As to Defendant McGhee specifically, the Court finds the allegations show he perpetrated an actual fraud for his direct personal benefit by making false promises that he never intended to honor.

### 3)     Fiduciary Duty Claims

Plaintiffs raise claims alleging Defendants breached their fiduciary duty, both negligently and as investment advisors and/or co-owners, by (1) not disclosing McGhee's prior real estate fraud, (2) recommending the Plaintiffs fund the loan knowing it would not be repaid, (3) failing/refusing to disclose the true nature of the transaction involving the subject property, (4) failing to provide a reasonable accounting of the income, expenses, profits, and losses of TKI 1, (4) selling the property over Plaintiffs objection, and (5) engaging in self-dealing. (Dkt. 1 at ¶¶ 55, 79, 83.)

The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of the duty by the defendant; and (3) injury to the plaintiff or benefit to the defendant because of the defendant's breach. *Guevara v. Lackner*, 447 S.W.3d 556, 580 (Tex. App.-Corpus Christi-Edinburg 2014) (citations omitted).

A fiduciary duty may arise formally, such as in attorney-client or trustee relationships, or informally, through moral, social, domestic, or purely personal relationships of trust and confidence. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.-Dallas 2006). In cases where the facts are undisputed, the existence and breach of a fiduciary relationship is a matter of law for the court to decide. *Meyer*, 167 S.W.3d at 330-31.

"The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). The law recognizes the existence of confidential relationships in those cases "in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998) (internal citations and quotations omitted).

It has long been recognized, however, that "'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer*, 167 S.W.3d at 330 (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)). The subjective trust of one person in another is also not sufficient to create a duty. See *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 880 (Tex. App.-Houston (14th Dist.) 2001). "[A] confidential relationship is a two-way street: 'one party must not only trust the other, but the relationship must be mutual and understood by both parties.'" *Id.* at 882 (citation omitted). The Supreme Court of Texas has long cautioned that "[i]n order to give full force to contracts, we do not create such a relationship lightly." *Schlumberger*, 959 S.W.2d at 177.

In this case, the Court finds there was no formal or informal fiduciary duty owed between the parties. The parties in this case entered into a business relationship wherein they were made equal co-owners in TKI 1. (Dkt. 1, Ex. C and D.) "The relationship between shareholders or members in a closely held corporation, without more, does not give rise to fiduciary duties." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3rd 349, 366 (Tex. App.-Houston (14th Dist.) 2016) (citing cases). "[I]nformal fiduciary duties do not arise in business transactions (as contrasted with a moral, social, domestic, or merely personal relationship) unless the special relationship of trust and confidence existed before the transaction at issue." *Id.* at 365 (citing cases). To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist before and apart from the agreement made the basis of the suit. *Ritchie v. Rupe*, 443 S.W.3d 856, 874 n. 27 (Tex. 2014); *Meyer*, 167 S.W.3d at 331; *Associated Indem. Corp.*, 964 S.W.2d at 288. Mere subjective trust does not, as a matter of law, transform arm's-length dealing into a fiduciary relationship. *Meyer*, 167 S.W.3d at 331; *Schlumberger*, 959 S.W.2d at 177.[13]

Plaintiffs have not alleged facts giving rise to a fiduciary duty other than to state that "a fiduciary duty existed" between the parties and the Defendants "owed fiduciary duties" to Plaintiffs. (Dkt. 1 at ¶¶ 59, 82.) The Plaintiffs' allegations regarding their reliance on the Defendants' assurances do not establish the existence of a special relationship of trust and confidence that existed <u>before and apart</u> from the parties' agreement. The

---

[13] The law in Idaho for breach of fiduciary duties is the same. *See High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 752 (Idaho 2010).

allegations instead show that the Plaintiffs' reliance was formed during the negotiation of and as a part of the parties' Agreement. Therefore, the Court finds there was no fiduciary duty owed by Defendants. The Motion is denied as to Eighth Cause of Action.[14]

### 4) Accounting

The Ninth Cause of Action seeks an accounting of TKI 1's finances to determine what, if any, rights and/or obligations Plaintiffs have with respect to TKI 1. (Dkt. 1.) Plaintiffs acknowledge this claim may be deemed moot in the event they are awarded full damages. (Dkt. 29.) Given the Court's ruling in this Order awarding Plaintiffs contract damages, the Court finds this claim is moot. The Motion is therefore denied as to this claim.

### 5) Unjust Enrichment

Unjust enrichment is an equitable doctrine that allows recovery in quasi-contract or restitution if a contemplated agreement is "unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons." *French v. Moore*, 169 S.W.3d 1, 11 (Tex. App.-Houston (1st Dist.) 2004). It is typically found to apply where one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Burlington N. R. Co. v. S.W. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.-Texarkana 1996); *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

---

[14] Plaintiffs' Seventh Cause of Action claims breach of fiduciary duty by an investment advisor. (Dkt. 1.) Plaintiffs do not address this claim in their Motion. (Dkt. 29.) An investment advisor generally owes a fiduciary duty to their client. *See Kang v. Song*, No. 02-15-00148-CV, 2016 WL 4903271, at *7 n. 42 (Tex. App.-Fort Worth 2016) (citing cases). The Court, however, finds the Seventh claim is inconsistent with Plaintiffs argument that the Agreement between the parties was a "loan" not an "investment." (Dkt. 11 at 7-8.) Because the Agreement was a loan, there was no fiduciary duty owed by Defendants as investment advisors. The Motion is denied on this claim.

The remedy is not proper simply because it might be more expedient or generally fair that some compensation be afforded or because the benefits amount to a windfall. *See Heldenfels Bros. v. City of Corpus Christi*, 932 S.W.2d 39, 42 (Tex. 1992). The doctrine is based on the equitable principle that one who receives benefits, even passively, which would be unjust to retain ought to make restitution for those benefits. *See Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.-Corpus Christi 2002).[15]

As an equitable theory of relief, the unjust enrichment claim is only applicable where there is no relief available at law; i.e., where no valid, express contract covers the claims raised. Because the Court has found that the parties' contractual Agreement governs their dispute in this case, Plaintiffs are unable to recover under this claim. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (allowing for no recovery under a quasi-contract or unjust enrichment theory where a valid express contract covers the disputed subject matter). Therefore, the unjust enrichment claim is denied.

## C.     The Sum of Money at Stake in the Action

The third default judgment factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F.Supp.2d at 1176; *see also Eitel*, 782 F.2d at 1471-72. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar*, 725 F.Supp.2d at 921 (citation omitted). The amount of damages sought by Plaintiffs here is the amount of

---

[15] The law for an unjust enrichment claim in Idaho is consistent with Texas law. *See Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011).

the principal paid, $75,000, plus the contractual interest of 25% and fees of $657.63 incurred in bringing this action. The Court finds the amount of damages sought by Plaintiffs is appropriately proportional to the claimed wrongdoing by Defendants as it is the amount of money lost by Plaintiffs as a result of the Defendants' conduct in this case.

### D.     The Possibility of a Dispute Concerning Material Facts

Plaintiffs have alleged facts and pointed to evidence supporting their claims. Defendant McGhee has filed materials challenging the accuracy of certain of the allegations in the Complaint. In particular, McGhee disputes the truthfulness of the reports concerning his having engaged in real estate fraud. As determined above, the Court finds the uncontested facts, when taken as true, establish the merits of the claims for breach of contract and two of the fraud claims. Therefore, the Court finds there are no factual disputes precluding entry of default judgment on those claims.

### E.     Whether the Default was Due to Excusable Neglect

The entry of default here is not attributable to excusable neglect. Plaintiffs have diligently sought to resolve this case and have served Defendants who have failed to properly appear.

### F.     The Strong Policy Favoring Decisions on the Merits.

The general rule or preference is that cases "be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F.Supp.2d at 1177 (citation omitted). "Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible." *Id.* Thus, Rule 55(a) allows the Court to "decide a case before the merits are

MEMORANDUM DECISION AND ORDER - 23

heard if defendant fails to appear and defend." *Landstar*, 725 F.Supp.2d at 922. Because the Defendants have failed to properly appear and/or respond to Plaintiff's claims in this case, the general policy does not preclude the entry of default judgment against the Defendants.

### G. Conclusion

Based on the record and the foregoing, the Court finds the *Eitel* factors weigh in favor of entering default judgment in this matter on the breach of contract and two of the fraud claims. The Motion is denied as to the other claims for the reasons stated herein.

## 2. Damages

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the amount and character of the relief that should be awarded." *Landstar*, 725 F.Supp.2d at 920 (citations omitted). The complaint's factual allegations relating to the amount of damages are not taken as true. *Geddes*, 559 F.2d at 560. Upon entering default judgment under Rule 55(b)(2), the Court "may conduct hearings or make referrals...when, to enter or effectuate judgment, it needs to...determine the amount of damages." Fed. R. Civ. P. 55(b)(2). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).

In this case, Plaintiffs point to the terms of the contract to support their claimed damages. Having reviewed these materials and the entire record herein, the Court finds a hearing is not necessary to determine damages and finds as follows.

### A. Damages

In determining the type and amount of damages, Rule 8(a)(3) requires that "plaintiff's demand for relief must be specific, and it must prove up the amount of damages." *Landstar*, 725 F.Supp.2d at 923 (citation and quotations omitted). Rule 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default." *Id.* (citing *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962) (stating that a default judgment may not be different in kind from or exceed in amount that prayed for in the complaint); *PepsiCo*, 238 F.Supp.2d at 1174.

Plaintiffs seek recovery of actual damages in the amount of the principal funds they paid to Defendants, $75,000, plus contractual interest, and costs. (Dkt. 29.) Defendants do not specifically contest the damages sought by Plaintiffs. In his letter, however, Defendant McGhee makes a generalized claim that the parties' arraignment was an investment opportunity where there was no guarantee of any profits. (Dkt. 25.) Plaintiffs maintain the written Agreement provided the terms governing the Plaintiffs' loan and repayment of that loan. (Dkt. 29.)

The Court finds the express written terms of the Agreement set forth the repayment terms of the loan. The Agreement states:

> "For the considerations hereinafter mentioned, the funds W/C provides will be compensated in a twelve (12) month APR of 25% interest, with the full year's interest paid to W/C even in the event of the loan being repaid earlier than 6 months from the date of wired funds. The loan will be paid off by the 6 month period or at the sale of the property …, which ever [sic] comes first. All funds will be fully reimbursed immediately in the event that [the property] is not secured by TKI. The loan can be paid off early with no pre-payment penalties. Once the loan is paid off in full, both parties can re-evaluate if they wish to continue with any new investments and if the same terms still apply. The initial investment will be $75,000. TKI will add W/C

as managers to [TKI1] with a business resolution that makes W/C 50% owner in TKI1.

(Dkt. 1, Ex. C.) The Agreement then provides that TKI 1 would hold title to the property and then "disburse all agreed upon funds to both parties minus any already reimbursed funds after the close of the final transaction of [the property]." (Dkt. 1, Ex. C.)

The Defendants have not argued or brought evidence to show that they are excused from performance of the repayment terms of the contract. In his letter, Defendant McGhee contends that there were no funds to distribute after the sale of the Texas property which could be construed to be an argument that the repayment terms of the contract were not triggered. (Dkt. 25.) That isolated statement, without more, is insufficient to defeat entry of default judgment in this case. Moreover, the express terms of the contract do not make repayment contingent upon there being profits realized from the sale of the property. (Dkt. 1, Ex. C.)

The Agreement states that the loan was to be "paid off by the 6 month period or at the sale of the property…, which ever [sic] comes first." The record reflects, and Defendants do not dispute, that the six month period expired in April of 2013 and the property was sold on February 5, 2015 for $250,871.00. Under either scenario, pay off of the loan is due and has not been made.

Having reviewed the record and the express terms of the Agreement, the Court finds that under the contract Plaintiff is entitled to repayment of the principal amount of funds paid, $75,000, plus one full year of contractual interest at 25% APR, $18,750, for a total of $93,750. This amount differs from that sought by Plaintiffs who seek to enforce the

contractual interest as running from the date the loan was funded on a per diem rate of $51.37 until the loan is paid off. (Dkt. 29.) The Court finds under the terms of the Agreement that the Plaintiffs were guaranteed one full year's interest of a twelve month APR of 25%. (Dkt. 1, Ex. C.) The terms of the contract are ambiguous as to whether and how the interest would be paid beyond one year. Therefore, the Court concludes the Plaintiffs have not proven they are entitled to interest beyond the first full year. This award of damages is consistent with Rule 54(c)'s requirement that the damages not exceed and must be of the kind and in the form sought in the complaint. *See* Fed. R. Civ. P. 54(c).

### B.      Costs and Fees

Plaintiffs also seek recovery of $657.63 in filing fees and service incurred in bringing this action. The Court finds this amount is properly recoverable by Plaintiffs in this case and is therefore awarded.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Default Judgement (Dkt. 29) is **GRANTED in part and DENIED in part** as follows:

1.      Default Judgement is HEREBY ENTERED against the Defendants Kirt R. McGhee and Turnkey Investments, LLC on Counts One, Two, and Six. The Motion is denied on all the remaining counts.

2.      Plaintiffs are awarded damages in the amount of $93,750 plus costs in the amount of $657.63 for a total award of $94,407.63.

3.     The Clerk of the Court is directed to serve a copy of this Order on all parties with the Defendants being served at the addresses listed on the Certificate of Service. (Dkt. 24.)

DATED: May 10, 2017

Edward J. Lodge
United States District Judge